UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DERRIN DYSON,

                Petitioner,

                                        **REPORT AND RECOMMENDATION**
                                             **20 CV 1916 (MKB)(LB)**

– against –

MATTHEW THOMS, *Superintendent of Five Points Correctional Facility*,

                Respondent.
-----------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

      Petitioner, Derrin Dyson, files this *pro se* petition seeking a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 challenging his 2015 New York Supreme Court, Kings County conviction. The Honorable Margo K. Brodie referred this petition to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that the petition should be denied.

## BACKGROUND

### I.    The Underlying Crimes

      According to the evidence adduced at trial,[1] on January 30, 2012, at approximately 11:30 a.m., Corrinne Daniel and Joseph DeJesus were in separate bedrooms of their top-floor apartment at 543 Madison Street in Bedford-Stuyvesant when petitioner and three other masked and gloved men, armed with guns and knives, entered their apartment. Tr. at 182–83, 584–90, 656–62. The men tied up and blindfolded DeJesus and Daniel in separate rooms while one of the men took the

---

[1] Petitioner waived a jury trial and was tried by the Honorable Albert Tomei in Kings County Supreme Court from October 13, 2015 to October 19, 2015; petitioner was sentenced on November 12, 2015. Trial Transcript ("Tr."), ECF No. 7-1 at 95–861. References to the trial transcript and motion papers are to the ECF page numbers.

1

victims' debit cards to a nearby ATM. Id. at 592–96, 661–66. The men threatened to kill DeJesus and Daniel if their other roommate returned or if they did not give them their money, their debit cards, and the correct PIN numbers to their bank accounts. Id. at 597–604, 662, 666–67. Several of the men, including petitioner, took turns groping and forcing Daniel to perform oral sex on them while threatening her with a gun and a knife. Id. at 604–06, 667–79, 687–700. The men left the apartment with laptops, cell phones, cash, DeJesus' Movado watch, and $1,000 withdrawn from Daniel's bank account. Id. at 597, 616, 626–29, 681–82.

Co-defendant Christopher Scott testified at trial, pursuant to a cooperation agreement, that he, petitioner, and two other co-defendants, all members of the Brower Boys gang, had gone to Scott's rooftop terrace, jumped over several buildings, and entered the top floor of 543 Madison Street. Id. at 352–58, 472–78. Scott's testimony regarding the events inside the apartment was generally consistent with the prosecution's account. Id. at 358–66, 383–85, 396–402.

Around 2:00 p.m. on the day of the break-in, petitioner and co-defendants took the stolen electronics equipment to a nearby bodega and tried to sell it to the owner, Adbo Alqotaini. Id. at 368–70, 519–25. Alqotaini testified that he initially declined to buy the items, but that later that day, another individual returned with the same items and said that petitioner had sent him. This time Alqotaini purchased the laptops. Id. at 523–28, 532–42.

On February 2, 2012, detectives searched co-defendant Scott's mother's apartment, where they discovered a loaded .22 revolver, which Scott admitted was used in the commission of the crime. They also found petitioner's Adidas pants which, according to Scott, petitioner had worn during the commission of the crime. Id. at 218–23. The police later found DeJesus' stolen Movado watch in petitioner's apartment. Id. at 640, 714–15.

2

## II. Petitioner's Trial

Shortly before the trial, the prosecution moved to introduce evidence that petitioner had pled guilty to two prior burglaries committed on December 25, 2011 and March 2, 2012. Tr. at 116–25. According to the prosecution, the December 2011 and March 2012 uncharged crimes involved the same modus operandi ("M.O.") as the burglary in the instant case. Specifically, in the prior burglaries, petitioner worked with two or three accomplices to steal electronics at a targeted apartment by accessing the rooftop of the target through one of the accomplices' residences. Id. at 116–25. The Court granted the prosecution's application to introduce this evidence for the limited purpose of proving defendant's identity and his acting in concert regarding the charged crime, but not for the purposes of establishing propensity. Id. at 138.

The prosecution also introduced screenshots of petitioner's Facebook posts into evidence, which depicted him wearing ski masks like the ones worn during the instant robbery. Id. at 379–81. During the early morning hours on the day of the crime, petitioner posted "Brakein daii On Dah ave..." on Facebook. Id. at 473–76. Later that day, petitioner posted a photograph depicting hundreds of dollars in cash with a caption that read "I'm Getting it. . .." Id. at 477–79.

Finally, the prosecution presented Robert Hindel, a supervisor at the Office of the Chief Medical Examiner (OCME), who testified that semen matching petitioner's DNA profile was found on the Adidas pants that petitioner wore during the robbery. Id. at 241–42, 321–24. Hindel could not testify as to when the semen had been deposited. Id. at 347–48. Defense counsel objected because Hindel himself had not prepared any of the DNA reports. Id. at 269, 276–78. Nevertheless, the Court permitted Hindel to testify. Id. at 280–81.

The Court found petitioner guilty of First Degree Criminal Sexual Act (N.Y. Penal Law § 130.50(1)), First Degree Sexual Abuse (N.Y. Penal Law § 130.65(1)), two counts of First Degree

3

Burglary (N.Y. Penal Law § 140.30(1)(3)), two counts of First Degree Robbery (armed with a deadly weapon) (N.Y. Penal Law. § 160.15(2)), two counts of First Degree Robbery (use or threatened use of dangerous instrument) (N.Y. Penal Law § 160.15(3)), two counts of Second Degree Criminal Possession of a Weapon (N.Y. Penal Law § 135.03(1)(3), two counts of First Degree Unlawful Imprisonment (N.Y. Penal Law § 135.10), and two counts of First Degree Criminal Possession of Stolen Property (N.Y. Penal Law § 165.40). Tr. at 830–34.

### III.  Procedural History

Petitioner appealed his conviction to the New York Appellate Division, Second Department, and argued that the state trial court's evidentiary ruling, allowing the prosecution to introduce evidence of prior uncharged crimes to prove defendant's identity as one of the perpetrators of the charged crime, denied him a fair trial. Petitioner also argued that he was denied his Sixth Amendment right to confront the witness when the prosecution introduced DNA evidence through the testimony of a witness who did not conduct the DNA testing himself. People v. Dyson, 169 A.D.3d 917 (2d Dep't 2019). The Appellate Division, Second Department, affirmed the trial court's judgment on February 20, 2019, finding that the trial court did not err in allowing evidence of prior uncharged crimes to be introduced for limited purposes, and that although the trial court erred in allowing the Hindel to testify, the error was harmless. Id. Petitioner's request for leave to appeal to the New York Court of Appeals was denied on April 15, 2019. People v. Dyson, 33 N.Y.d 975 (2019).

### IV.  Instant Petition

On April 23, 2020, petitioner timely filed the instant *pro se* petition, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petition, ("Pet."), ECF No. 1. Petitioner challenges his conviction on the same grounds he presented on appeal. See Pet. at 19, 28. Respondent opposes

4

the petition. See generally, Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, ("Opp."), ECF No. 7. Petitioner filed a reply to Respondent's opposition. Petitioner's Traverse in Return and Memorandum of Law, ("Reply"), ECF No. 10. On May 20, 2021, the Honorable Margo K. Brodie referred the petition to me for a Report and Recommendation.

## DISCUSSION

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only grant a habeas petition if petitioner's claim "was adjudicated on the merits in State court proceedings" and the state court proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet' . . . and 'highly deferential standard[,]'" and review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). Moreover, a state court's factual findings "shall be presumed to be correct unless the petitioner rebuts that presumption by clear and convincing evidence." Fernandez v. Capra, 916 F.3d 215, 221 n.1 (2d Cir. 2019) (citing § 2254(e)(1)) (internal quotation marks omitted).

A state court decision is "contrary to" clearly established Federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fischer, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established Federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Court cautions, however, that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original); see also Grayton v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

**II.     Exhaustion and Procedural Default**

A petitioner in custody pursuant to a state court judgment must exhaust his state court remedies prior to seeking federal habeas review. 28 U.S.C. § 2254(b)(1); see also Davila v. Davis, 137 S. Ct. 2058, 2064 (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'") (citation omitted). To exhaust state court remedies, the petitioner must satisfy the "fair presentation" requirement. Baldwin v. Reese, 541 U.S. 27, 29 (2004). A petitioner fairly presents a claim only if he "has informed the state court

6

of both the factual and the legal premises of the claim he asserts in federal court[,]" such that the state courts were "fairly alerted" to the claim's federal nature. Bierenbaum v. Graham, 607 F.3d 36, 47, 49 (2d Cir. 2010) (citations and quotation marks omitted); see also Baldwin, 541 U.S. at 32 (clarifying that a petitioner can "indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"); Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009) ("[A] claim is not 'fairly presented' to a state appellate court if discovery of that claim requires the court to 'read beyond a petition or a brief (or a similar document)' and conduct its own review of proceedings below.") (quoting Baldwin, 541 U.S. at 32). A claim not exhausted is considered procedurally defaulted. Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014).

An "important 'corollary' to the exhaustion requirement" is the procedural default doctrine, which provides that federal courts have no authority to review state court decisions that rest upon adequate and independent state law grounds. Lee v. Kemna, 534 U.S. 362, 375 (2002); see also Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment[.]'") (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). "The rule applies with equal force whether the state-law ground is substantive or procedural." Lee, 534 U.S. at 375 (citing Coleman, 501 U.S. at 729); Whitley v. Ercole, 642 F.3d 278, 285 (2d Cir. 2011). Federal habeas review of a claim is foreclosed where the state court has expressly relied on the petitioner's procedural default as an adequate and independent state law ground. Green, 414 F.3d at 294; Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam). A petitioner may, nevertheless,

7

obtain federal habeas review of a procedurally defaulted claim, if petitioner demonstrates either "cause for the default and prejudice," or that "failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman, 501 U.S. at 748–50).

### III. Petitioner's Claims

Petitioner raises two grounds for habeas review: (1) petitioner's right to a fair trial was violated by the trial court's evidentiary ruling admitting uncharged crimes evidence, and (2) the state court's application of clearly established Federal law was unreasonable when the Appellate Division found that the trial court's error in admitting the OCME supervisor's testimony against petitioner was harmless.

#### A. Petitioner's Right to a Fair Trial

Petitioner argues that the trial court's admission of evidence of his prior crimes was an error as a matter of state law that amounted to the denial of a constitutional right to a fair trial, and that the error was not harmless. Pet. at 19–27. Respondent argues that this ground is not cognizable on federal habeas review, and even if it was, the state court's decision was not contrary to, or an unreasonable application of, clearly established Federal law. Opp. at 11–15. This Court agrees.

As a threshold matter, petitioner's claim is based on People v. Molineux, 168 N.Y. 264, 272, 61 N.E. 286, 286 (1901). Molineux is a state evidentiary rule, not clearly established Federal law. See Cox v. Bradt, No. 10 Civ. 9175, 2012 WL 2282508, at *14 (S.D.N.Y. June 15, 2012) (holding that a Molineux ruling "constitutes an evidentiary ruling based on state law"); Sierra v. Burge, No. 06 Civ. 14432, 2007 WL 4218926, at *5 (S.D.N.Y. Nov. 30, 2007) (same).[2] Federal courts reviewing habeas petitions do not re-examine "state-court determinations on state-law

---

[2] The Clerk of Court is directed to send petitioner the attached copies of the unreported cases cited herein.

8

questions[.]" Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). The federal courts lack jurisdiction to re-examine questions of federal law from a state court judgment that "rests on a state law ground that is independent of the federal question and adequate to support the judgment[.]" Coleman, 501 U.S. at 729. Because Molineux decisions are based on state law, they are "generally not subject to habeas review." Cox, 2012 WL 2282508, at *14.

Moreover, petitioner argues that the state-court evidentiary ruling violated his constitutional right to a fair trial, but the Supreme Court has expressly declined to decide whether such evidentiary rulings violate due process. See Estelle, 502 U.S. at 75 n.5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). When, like here, there is no clear Supreme Court precedent on point, it cannot be said that the state-court's decision was contrary to, or an unreasonable application of, clearly established Federal law. Wright v. Van Patten, 552 U.S. 120, 124 (2008).

Although habeas relief may be warranted in the rare case where the state evidentiary ruling "resulted in a violation of a fundamental constitutional right," Cox, 2012 WL 2282508, at *15, a state evidentiary ruling can only rise to a violation of due process if the admitted evidence was sufficiently material to "provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985).

Here, petitioner fails to meet this heavy burden. First, the M.O. evidence was admitted for the limited purpose of identifying petitioner as one of the perpetrators and helped to complete the narrative of events regarding the charged crime. See Reyes v. Morrissey, No. 07 Civ. 2539, 2010 WL 2034531, at *13 (S.D.N.Y. Apr. 21, 2010) (recommending dismissal of habeas petition and recognizing "[o]ne legitimate reason for the introduction of [uncharged crimes] evidence is to

9

complete the narrative of events regarding the commission of the crime") (internal quotation marks omitted). Second, the trial court limited the potential prejudicial effect of the evidence by holding it was inadmissible to show the petitioner's criminal propensity. Tr. at 139; see, e.g., Mercedes v. McGuire, No. 08 Civ. 299, 2010 WL 1936227, at *7 (E.D.N.Y. May 12, 2010) (denying a habeas petition and finding the state trial courts limiting instruction to the jury "lessen[ed] the potential prejudicial effect of the uncharged act evidence"). Here, as with all bench trials, the "judge is presumed to have considered only admissible evidence in making [his] findings." Bodenburg v. Conway, 05-cv-01119, 2007 WL 2295812, at *10 (E.D.N.Y. Aug. 4, 2007) (quoting Dumas v. Strange, No. 00 CV 963, 2002 U.S. Dist. LEXIS 13597, at *42–43 (D. Conn. July 3, 2002)).

In light of the record herein, the state court's decision to admit the evidence regarding the two prior burglaries did not deprive petitioner of his constitutional right to a fair trial and was not contrary to, or an unreasonable application of, clearly established Federal law. It is therefore recommended that this ground should be denied.

### B.     Petitioner's Confrontation Clause Claim

Petitioner argues that the Appellate Division unreasonably applied clearly established Federal law when it ruled that admitting the testimony of DNA expert Hindel was harmless. Pet. at 28–37. Respondent argues that the Appellate Division did not unreasonably apply Supreme Court precedent in ruling that any such error was harmless, because the proof of defendant's guilt, absent the erroneously admitted evidence was overwhelming. Opp. at 16. This Court agrees.

The Appellate Division held that Hindel should not have been allowed to testify regarding the DNA found on the pants petitioner wore during the robbery because he had not prepared the report himself. People v. Dyson, 169 A.D.3d 917 (2d Dep't 2019). The Appellate Division found that Hindel's testimony thus violated petitioner's Sixth Amendment right to confront witnesses

10

testifying against him, but that this error was harmless. Id. In Brecht v. Abrahamson, the Supreme Court held that the standard for determining whether habeas relief must be granted based upon a constitutional error at trial is not whether the error was harmless beyond a reasonable doubt, but whether it "had substantial and injurious effect or influence in determining the [trier of fact's] verdict." 507 U.S. 619, 623 (1993). Whether an error is deemed harmless depends upon a host of other factors including the importance of the testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, and the overall strength of the prosecution's case. See Samuels v. Mann, 13 F.3d 522, 526 (2d Cir. 1993); Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).

The Second Circuit has emphasized that "[t]he strength of the prosecution's case, absent the erroneously admitted evidence, 'is probably the single most critical factor in determining whether [the] error was harmless.'" Wood v. Ercole, 644 F.3d 83, 94 (2d Cir. 2011) (quoting Latine v. Mann, 25 F.3d 1162, 1167–68 (2d Cir. 1994)). The prosecution's other evidence need not be "overwhelming," only "weighty." Samuels, 13 F.3d at 527–28.

Here, even when stripped of Hindel's testimony regarding the DNA evidence, the strength of the evidence against petitioner remained substantial. A co-defendant, Scott, testified that petitioner participated in the robbery and the sexual assault. Tr. at 433, 458–60, 471–77. Daniel gave first-hand testimony as to petitioner's commission of the sexual crimes against her. Id. at 667–79. Alqotaini testified that petitioner came to his store to sell him the stolen electronics. Id. at 519–28. The prosecution also introduced petitioner's multiple incriminating Facebook posts which referred to the robbery in question. Id. at 454–55, 548–51, 552–54. Officer Quinones testified that he found a gun in Scott's apartment and Scott testified that it was the gun used in the robbery. Id. at 293–98. Officer Bruno also testified that he found DeJesus's Movado watch in petitioner's

11

apartment. Id. at 640. Moreover, the DNA evidence that Hindel testified about was of limited use to the prosecution because it could not be used to determine when the semen was deposited onto the pants. Id. at 422–23.

In sum, Hindel's testimony did not have a "substantial and injurious effect or influence" on the verdict because there was strong evidence outside of the erroneously admitted testimony that independently established petitioner's guilt. Therefore, the state court's harmless error decision was not contrary to, or an unreasonable application of, clearly established Federal law. It is therefore recommended that petitioner's application for habeas corpus relief should be denied on this ground.

## CONCLUSION

Accordingly, it is respectfully recommended that petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. As petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability should issue. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability). It is further recommended that for purposes of an appeal in forma pauperis, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

                                                                    /S/_____
                                                             LOIS BLOOM
                                                             United States Magistrate Judge

Dated: October 13, 2021
       Brooklyn, New York